No. 2901

Second Circuit

---

FROST LUMBER INDUSTRIES v. ARRANT & WOOD

---

(May 13, 1927. Opinion and Decree.)

---

(*Syllabus by the Editor*)

1. **Louisiana Digest—Timber—Par. 15.**

One who cuts timber through error will be made to pay the value of the timber at the stump and not its value in manufactured state.

2. **Louisiana Digest—Appeal—Par. 625.**

The finding of the trial court on matters of fact, namely, that the defendant cut plaintiff's timber through error and that it was worth $5.00 per thousand at the stump, being clearly correct, is affirmed.

Appeal from the Third Judicial District Court of Louisiana, Parish of Union.

Action by Frost Lumber Industries, Inc., against Arrant & Wood.

There was judgment for plaintiff and defendant appealed.

Judgment affirmed.

Edward Everett, Jr., H. G. Fields, of Farmerville, attorneys for · plaintiff, appellee.

H. E. Dawkins, S. L. Digby, of Farmerville, attorneys for defendant, appellant.

ODOM, J. We find in the record the following written opinion of the district judge, which we quote in full:

"Plaintiff sues defendant for damages in the sum of twelve hundred and thirty-one dollars and ten cents with five per cent interest from judicial demand, alleged to have been caused by defendant having cut and removed a lot of timber belonging to plaintiff and standing on plaintiff's land without plaintiff's knowledge or consent and converting the same to defendant's use, which timber is alleged to be of a value of seven hundred and thirty-one dollars and ten cents on the stump, and the further sum of five hundred dollars as damages resulting from defendant's trespassing upon plaintiff's property.

"The timber alleged to have been cut and removed is estimated in plaintiff's petition to approximately 47,740 feet, the alleged value of which is declared to be $15.00 per thousand feet; while the other item of damage is set forth in an unspecified and unitemized charge of $500.00 as damage done to land and growing timber.

"In its answer, defendant admits that it cut and removed some timber from plaintiff's land and belonging to plaintiff, but denies cutting and removing the quantity alleged by plaintiff; and while admitting liability for the timber it did get, it denies any and all other ·damage claimed by plaintiff.

·"Defendant called Mrs. Carrie Tugwell, individually and as tutrix of the minor, W. T. Tugwell, in warranty as defendant's vendor of the land defendant was the owner of adjacent to the timber cut by it on plaintiff's land, and Mrs. Tugwell called in warranty her vendor, Lorenzo Ellis, both of the warrantors answering and denying liability. But as defendant was not being sued for cutting its own timber on its own land but for cutting plaintiff's timber on plaintiff's land, there was no ground for calling anyone in warranty. Hence the calls in warranty are annulled and set aside and the warrantors are discharged at the cost of defendant.

"Defendant also files a plea of prescription of one year in bar of plaintiff's action for the recovery of damages for cutting the timber sued for by plaintiff, and pleads same in bar of the rights of action of the plaintiff herein, which was referred to the merits.

"It is not alleged specifically in plaintiff's petition how this damage occurred, but the evidence is to the effect that it occurred from the operations of cutting and logging the timber and a forest fire, but which propositions are not shown. Those operations, it appears from the evidence, occurred in the late summer or early fall of 1924, and this suit was filed November 19, 1925, and citation was served on defendant November 23, 1925. Not one of plaintiff's witnesses testifies, even approximately, to the date this timber was cut and logged; hence we have only the testimony of defendant's witnesses to depend upon for proof of that fact.

"Jukes Arrant, a member of defendant partnership, testifying as a witness for defendant, says that the timber was cut in August or September, 1924. Witness Buck Bilberry testifies that the timber was cut in the month of September and that the forest fire occurred about the last of November. Monroe Taylor testifies that he was hauling this timber for defendant about November, 1924. He also testifies that the fire occurred the latter ·part · of November, 1924. This evidence shows conclusively that the timber was cut ·and

logged prior to the 19th day of November, the date of the filing of this suit. Not so, however, as to the value of the timber cut, prescription against an action for the recovery of which only began to run from the date of the discovery of the act of trespass by plaintiff.

"The date of the discovery that the timber had been cut appears to be sufficiently proven to have been in December, 1924.

"Witness T. L. Holloway, agent of plaintiff, testifies that he made the discovery on the 19th day of December, 1924, when he went on the land where the timber had stood and noted the fact for the first time that some other than the owner had been cutting it. This witness was positive as to the date and gave a sufficient reason for his knowing it to be true. His testimony is opposed only by the old negro, Buck Bilberry, who went with witness Halloway onto the land the day of the discovery and who fixed the date along about the first of November, 1924. Holloway is corroborated while Bilberry is not. Besides, considering the relative intelligence of the two witnesses, the court considers that Holloway's statement is more believable than that of Bilberry. Hence the court concludes that plaintiff's suit, insofar as the value of the timber is concerned, has been brought within the prescribed time and is not barred by the prescription of one year.

"No damage could be awarded on account of the fire getting out in the timber for the reason that there is absolutely no evidence to show that the defendant or any of its agents, laborers or employees started or was responsible for the starting of the fire. Furthermore, even if the evidence did show that there was damage sustained on this score, it is so vague and indefinite and uncertain in manner and amount as to be wholly insufficient to sustain any intelligent judgment. This, then, reduces the issues to two questions, viz.: the number of feet of timber cut and carried off and the value of that timber to plaintiff in the form of stumpage.

"Defendant does not deny liability in toto, but does deny owing the amount claimed for the timber. In his testimony witness Jules Arrant, one of the defendant partnership, appears to admit that he cut more of plaintiff's timber than plaintiff claims compensation for, as the court understands his testimony, whether he so intended or not. He states that he cut all of the timber that had been cut off the land or timber involved in this suit. (Page 65 of testimony.) When asked by plaintiff's counsel how much timber had been cut from the eighty acres included in this suit, he answered 52,000 feet. (Testimony, page 57.) And in another place in his testimony (page 86) it appears that he estimates the timber he cut at approximately four thousand feet only. No other witness of defendant testifies to the quantity of timber cut by defendant. And this, too, notwithstanding it was an easy matter to have run out the lines of defendant's thirty acres and count the number of trees cut outside of these lines and estimate the stumpage, as appears to have been done by plaintiff.

"On the contrary, plaintiff put two witnesses on the stand who testified to the quantum of the stumpage cut by defendant. T. L. Holloway testifies that he counted the trees and made an estimate of the number of feet cut, and the whole amounted to forty-eight thousand feet. Witness W. F. Addison, when asked, 'From your estimate, how much timber was cut and removed from all the land lying north and east of Meridian Creek?' answered, 'All the timber lying east and north of Meridian Creek was a total of 22,500 feet.' He was then asked if this included the high hills and answered, 'There was a total of 14,500 feet cut.' These two statements or estimates make the matter about as obscure and uncertain as could well be stated. And strange as it may seem, counsel for plaintiff leave the matter that way, and proceed to question the witness about the value of the timber. From the subsequent answers of this witness to questions propounded by counsel for defendant, it appears that the total estimate is 22,500 feet. These are the only witnesses who

testify to the quantity of timber cut by defendant, and from their testimony the court considers the quantity proven to be twenty-two thousand five hundred feet.

"Now, as to its value at the stump. The testimony varies all the way from two dollars per thousand feet to eight dollars per thousand feet. The lower estimates are made by the defendant, while the higher estimates are made by witnesses for plaintiff. On the part of plaintiff witness Harrell testified that the timber at the stump was worth five or six dollars per thousand and that medium virgin pine was worth four or five dollars per thousand; and witness Addison said it was worth five dollars at the stump and if sawed into logs and delivered on the train it would be worth nine to ten dollars per thousand. Taking these estimates as a guide and adopting an average to go by, the court considers that five dollars per thousand feet is what defendant should pay plaintiff for the timber cut and converted to defendant's own use.

"It is evident from the evidence in this case that defendant did not intentionally trespass on plaintiff's property and knowingly appropriate it to his own use, and if this be true defendant should not be penalized and made to pay a fancy price for the timber cut and removed. But at the same time plaintiff should have the full value of the timber as it stood on the land before it was cut. The price allowed I believe is the full value.

"It is therefore ordered that the plaintiff have judgment against defendant, Arrant & Wood, and J. V. Arrant and George P. Wood in solido, for the sum of one hundred and twelve dollars and fifty cents, with five per cent interest thereon from judicial demand until paid and for all costs of this suit."

Counsel for appellant point out no error in this opinion, except as to the amount allowed for the timber cut and removed. They argue that the defendant was in bad faith and should pay for the timber in its manufactured state. We have carefully read the testimony and conclude, as did the district judge, that defendant cut the timber through error. The record utterly fails to establish bad faith on the part of defendant.

As we find no error in the opinion rendered by the district judge, we adopt and make it our own.

Judgment affirmed; defendant to pay all costs.